EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: <br><br> Rodolfo G. Ocasio Bravo <br> (TS-11,850) | 2022 TSPR 97 <br><br> 209 DPR ____ |

Número del Caso:  AB-2020-102
                  AB-2022-10


Fecha: 30 de junio de 2022


Oficina del Procurador General:

     Lcda. Mabel Sotomayor Hernández
     Subprocuradora General

     Lcda. Yaizamarie Lugo Fontánez
     Procuradora General Auxiliar


Abogado del promovido:

     Por derecho propio


Materia:  Conducta Profesional – Suspensión inmediata e indefinida del ejercicio de la abogacía y la notaría por violación a los Cánones 9, 18, 19 y 20 del Código de Ética Profesional.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Rodolfo G. Ocasio Bravo
     (TS-11,850)

AB-2020-0102
AB-2022-0010

PER CURIAM

En San Juan, Puerto Rico, a 30 de junio de 2022.

Nos corresponde nuevamente ejercer nuestra facultad disciplinaria sobre un integrante de la clase togada que se apartó de las normas éticas que rigen nuestra profesión. Ello, como consecuencia de haber infringido los Cánones 9, 18, 19 y 20 del Código de Ética Profesional, <u>infra</u>.

**I**

El Lcdo. Rodolfo G. Ocasio Bravo (licenciado Ocasio Bravo) fue admitido al ejercicio de la abogacía el 16 de enero de 1997. Posteriormente, prestó juramento como notario el 25 de agosto de 1997.

**i. AB-2020-0102**

El 25 de septiembre de 2020 el Sr. Frank Fournier Dasta (señor Fournier Dasta) presentó una queja contra

el licenciado Ocasio Bravo. Adujo que contrató los servicios profesionales del letrado el 6 de noviembre de 2018 para que lo representara en un caso de custodia, Caso Núm. F CU2018-0110. Alegó que este desatendió el caso, no cumplió con las órdenes del Tribunal, no compareció a cinco vistas judiciales, ni respondía los correos electrónicos, los mensajes de textos, ni las llamadas telefónicas que le realizó.

El señor Fournier Dasta expuso que, ante la falta de diligencia y las incomparecencias del licenciado Ocasio Bravo a las vistas, el Tribunal de Primera Instancia le aumentó la pensión alimentaria y le impuso multas, sanciones y penalidades. Adujo que incurrió en $25,000 por los costos de aumento de pensión, contratación de otro abogado y multas. A su vez, enunció que el letrado no le había devuelto su expediente, a pesar de sus requerimientos y los de su nuevo abogado.

El 23 de abril de 2021 el licenciado Ocasio Bravo contestó la queja. Manifestó que atendió dos asuntos del señor Fournier Dasta: los Casos Núm. F CU2018-0110 y F AL2018-0198. Adujo que el 27 de junio de 2019 se celebró una vista, en la que excusó la ausencia del señor Fournier Dasta, y que luego hubo dos vistas adicionales ante el Hon. Javier Varela Rivera, Juez Superior, quien falleció durante el proceso de estas vistas. Señaló que el señor Fournier Dasta contrató una nueva representación legal para los casos, con la cual no se había comunicado. Añadió que entendía que se había suscitado una

falta de comunicación con el señor Fournier Dasta, pero que estaba trabajando para remediar ese asunto.

Posteriormente, el 21 de mayo de 2021 el señor Fournier Dasta replicó la contestación del licenciando Ocasio Bravo. Aclaró que el licenciado Ocasio Bravo lo representó en dos casos. Reiteró que este se ausentó a diversas vistas en ambos casos, incluyendo la vista de fijación de pensión en el Caso Núm. F AL2018-0198 celebrada el 19 de septiembre de 2019. Explicó que, ante la incomparecencia del licenciado Ocasio Bravo a la vista, se le aumentó la pensión de $380 a $1,692 mensuales sin ninguna evidencia. Además, expuso que en esa vista la Examinadora de Pensiones Alimentarias (EPA) concluyó que él tenía una deuda ascendente a $9,434 en atrasos. **Mediante una Resolución de 26 de septiembre de 2019, el foro primario consignó las determinaciones de la vista,** aprobó el Informe de la EPA, le aumentó la pensión al señor Fournier Dasta y le imputó la existencia de la referida deuda.

El señor Fournier Dasta añadió que, durante los meses de octubre y noviembre de 2019, el licenciado Ocasio Bravo no se comunicó con él. **Indicó que se enteró sobre la determinación de la pensión el 3 de diciembre de 2019, varios meses luego de que se emitiera.** Alegó que el Tribunal señaló una vista de desacato en su contra debido a la incomparecencia del licenciado Ocasio Bravo. Señaló que la vista de 3 de diciembre de 2019 fue la última vista a la que el letrado compareció como su representación legal. Adujo que el 27, 29 y 30 de diciembre de 2019 y 1 de enero de 2020, solicitó la renuncia

al letrado, mediante mensajes a través de la plataforma *WhatsApp* y correos electrónicos, pero que estos no fueron respondidos. Manifestó que el 9 de enero de 2020 presentó una moción por derecho propio en la que solicitó al tribunal que relevara al licenciado Ocasio Bravo de su representación legal. Expuso que su actual representación legal intentó contactar al letrado en múltiples ocasiones desde febrero de 2020 para solicitarle la devolución de los expedientes, pero este no había respondido. Indicó que el licenciado Ocasio Bravo no había devuelto aún el expediente, lo que había dificultado el manejo del caso. Reiteró que la conducta del letrado le causó daños económicos sustanciales, los cuales estimó en $57,921.

Así las cosas, el 17 de junio de 2021 la Secretaría de este Tribunal refirió la queja a la Oficina del Procurador General (OPG) para que realizara la investigación de rigor y rindiera el informe correspondiente.

En cumplimiento con lo ordenado, la OPG presentó su informe el 24 de febrero de 2022. En síntesis, concluyó que el licenciado Ocasio Bravo había infringido los cánones 9, 18, 19 y 20 del Código de Ética Profesional, infra, y recomendó que emitiéramos la sanción que entendiéramos procedente.

Como parte de su investigación, la OPG remitió al letrado un requerimiento de información el 16 de julio de 2021, el cual debía ser contestado en o antes del 28 de julio de 2021. Ante el incumplimiento de este, la OPG le concedió múltiples

oportunidades y términos para cumplir con lo requerido. Incluso, la OPG tuvo que solicitar el auxilio de este Tribunal para que le ordenara al letrado contestar su requerimiento, lo que hicimos el 14 de octubre de 2021, concediéndole 5 días para ello. En el término concedido, el letrado compareció a este Tribunal para informar que había cumplido con lo ordenado. Ello, a pesar de que, aun cuando el abogado remitió múltiple documentación, nunca contestó el requerimiento. En consecuencia, el 22 de octubre de 2021, la OPG tuvo que comparecer nuevamente ante nos para informar el incumplimiento del licenciado Ocasio Bravo con sus requerimientos. Luego de que este Tribunal le concediera un nuevo término para cumplir, el 6 de diciembre de 2021 la OPG recibió las contestaciones del letrado a su requerimiento del 16 de julio de 2021, a saber, **casi cinco meses después de habérsele solicitado**. Posteriormente, la OPG hizo un requerimiento adicional, el cual el licenciado Ocasio Bravo también demoró en contestar injustificadamente.

Este Tribunal concedió un término a las partes para que se expresaran en torno al Informe de la OPG. Habiéndose dado por sometido este asunto, disponemos de la queja.

## ii. AB-2022-0010

El 20 de enero de 2022 la Sra. Myriam López Cotto (señora López Cotto) presentó una queja contra el licenciado Ocasio Bravo. Manifestó que era la parte demandante en el Caso Núm. K DP2016-0582 y que el 21 de septiembre de 2020 contrató los servicios del letrado como su representante legal. Aseveró

que en septiembre de 2020 le entregó todos los documentos del caso al letrado, pero que este nunca se reunió con ella ni le informó el estatus del proceso, a pesar de habérselo requerido en múltiples ocasiones. Dada la falta de información sobre su causa, acudió al tribunal para conocer el estatus del caso y así se enteró que se había archivado por inactividad. De acuerdo con lo que pudo constatar del expediente judicial, la señora López Cotto expresó que el licenciado Ocasio Bravo nunca compareció al tribunal para asumir su representación legal ni la representó adecuadamente, a pesar de este haberle dicho que atendería su caso. Indicó también que las actuaciones del letrado lesionaron sus derechos. Por último, adujo que el licenciado Ocasio Bravo mantenía consigo todos los documentos de su caso, por lo que nos solicitó que le ordenáramos que se los devolviera.

El 9 de febrero de 2022 la Secretaría de este Tribunal le informó al licenciado Ocasio Bravo sobre la presentación de la queja y le concedió un término de 10 días para que la contestara. Tras el incumplimiento del letrado con ese término, el 9 de marzo de 2022 se le cursó otra comunicación en la que se le concedió un término adicional de 10 días. Expirado ese término sin la comparecencia del licenciado Ocasio Bravo, el 23 de marzo de 2022 este solicitó una prórroga, la cual se le concedió. Aún sin contestar la queja, el 21 de abril de 2022 el letrado nos suplicó un término adicional a tal efecto, por lo que se le concedió un **término final** de 20 días. Así las cosas, y aún sin cumplir, el 27 de

mayo de 2022 el licenciado Ocasio Bravo solicitó un término adicional de 20 días para contestar la queja.

Habida cuenta del tiempo transcurrido desde que se le notificó la queja al letrado y dado su reiterado incumplimiento con las órdenes de este Tribunal para contestar la queja, corresponde ejercer nuestra facultad disciplinaria.

**II**

La conducta de miembros de la profesión legal se rige por los postulados contenidos en el Código de Ética Profesional, 4 LPRA Ap. IX. Este ordenamiento tiene como norte promover el desempeño profesional de los abogados y las abogadas conforme a los más altos principios de conducta decorosa. In re Espino Valcárcel, 199 DPR 761 (2018); In re Burgos García, 198 DPR 50 (2017). Esto, a su vez, redunda en el beneficio no solo de las instituciones de justicia, sino también de la ciudadanía en general. In re Rodríguez Lugo, 201 DPR 729 (2019); In re Cruz Liciaga, 198 DPR 828 (2017).

**A. Canon 9 de Ética Profesional**

El Canon 9 del Código de Ética Profesional, supra, impone a la clase togada el deber de "observar para con los tribunales una conducta que se caracterice por el mayor respeto". Véanse: In re Cruz Liciaga, supra, pág. 835; In re López Méndez, 196 DPR 956, 960-961 (2016). Como corolario del respeto que deben tener los abogados y las abogadas hacia el foro judicial, este postulado les ordena comparecer a tiempo a los señalamientos notificados por el tribunal, así como a

cualquier requerimiento u orden emitida por los tribunales. In re Pérez Guerrero, 201 DPR 345, 354 (2018); In re Rivera Navarro, 193 DPR 303, 311-312 (2015). Desobedecer las órdenes emitidas por los tribunales de justicia constituye un grave insulto a la autoridad de estos, lo cual está en directa violación al deber de conducta que exige el Canon 9. In re Hance Flores, 193 DPR 767, 776-777 (2015).

Según hemos recalcado, los integrantes de la profesión legal tienen el deber de responder diligente y oportunamente a nuestros requerimientos y órdenes en los procesos disciplinarios. In re Lajara Radinson, 207 DPR 854, 863 (2021). Esa responsabilidad ineludible se extiende a los requerimientos de otras entidades públicas que intervienen en el proceso disciplinario, como lo es la Oficina del Procurador General. In re Malavé Haddock, 207 DPR 573, 582 (2021). "A tales efectos, el profesional legal que asuma una actitud de dejadez y menosprecio a las órdenes tanto de este Tribunal como a las del Procurador General infringe el Canon 9 de Ética Profesional". In re Carmona Rodríguez, 206 DPR 863, 869 (2021). Esta falta ética es independiente de los méritos que pueda tener la queja presentada contra el abogado. In re Malavé Haddock, supra. "[D]esatender los requerimientos realizados en el curso de un procedimiento disciplinario denota indisciplina, desobediencia, displicencia, falta de respeto y contumacia hacia las autoridades, y revela una gran fisura del buen carácter que debe exhibir todo miembro de la profesión legal". In re Jiménez Meléndez, 198 DPR 453, 457

(2017). Además, una afrenta de este tipo es suficiente para decretar la separación inmediata e indefinida de la profesión. In re López Pérez, 201 DPR 123, 126 (2018).

### B. Canon 18 de Ética Profesional

El Canon 18 del Código de Ética Profesional, supra, establece el deber de competencia del abogado y la abogada. Dispone, en lo pertinente, que:

> Será impropio de un abogado [y una abogada] asumir una representación profesional cuando está consciente de que no puede rendir una labor idónea competente y que no puede prepararse adecuadamente sin que ello apareje gastos o demoras irrazonables a su cliente o a la administración de la justicia.

> Es deber del abogado [y la abogada] defender los intereses del cliente diligentemente, desplegando en cada caso su más profundo saber y habilidad [,] y actuando en aquella forma que la profesión jurídica en general estima adecuada y responsable.

El deber de diligencia que impone el Canon 18 "implica que el [abogado y la abogada] realice las gestiones que le fueron encomendadas en momento oportuno, en forma adecuada y sin dilaciones que puedan afectar la pronta solución de la controversia". In re Amill Acosta, 181 DPR 934, 940 (2011), citando a S. Steidel Figueroa, Ética y responsabilidad del abogado, San Juan, Pubs. JTS, 2010, pág. 179. Lo anterior, pues en la profesión de la abogacía no existe espacio para que los abogados y las abogadas actúen con indiferencia, desidia, despreocupación, inacción y displicencia en la tramitación de los casos que le han sido encomendados. In re Cuevas Borrero, 185 DPR 189, 199 (2012).

Ciertas conductas constituyen, de su faz, violaciones al deber de diligencia que dispone el Canon 18, supra. Entre esas conductas hemos resaltado las siguientes: (1) no comparecer a los señalamientos del Tribunal; (2) no contestar los interrogatorios presentados; (3) desatender o abandonar el caso; (4) permitir que expire el término prescriptivo o jurisdiccional de una causa de acción, y (5) incurrir en cualquier tipo de actuación negligente que resulte en la desestimación o archivo del caso. In re Miranda Daleccio, 193 DPR 753, 762-763 (2015).

### C. Canon 19 de Ética Profesional

Por su parte, el Canon 19 de Ética Profesional, supra, establece que:

> El abogado [y la abogada] debe mantener a su cliente siempre informado de todo asunto importante que surja en el desarrollo del caso que le ha sido encomendado.
>
> Siempre que la controversia sea susceptible de un arreglo o transacción razonable debe aconsejar al cliente el evitar o terminar el litigio, y es deber del abogado notificar a su cliente de cualquier oferta de transacción hecha por la otra parte.
>
> El abogado [y la abogada] que representa varios clientes con intereses comunes o relacionados entre sí no debe transigir ninguno de los casos envueltos sin que cada cliente esté enterado de dicha transacción y sus posibles consecuencias.

Hemos dicho que mantener al cliente informado es un elemento imprescindible de la relación abogado-cliente. In re García Ortiz, 176 DPR 123, 128 (2009). Cabe destacar que no se trata de cualquier tipo de comunicación entre el abogado y el cliente, sino aquella mediante la cual se informa al

cliente debidamente de todo asunto importante en la tramitación del caso. In re Rivera Rodríguez, 202 DPR 1026 (2019). Asimismo, un abogado incumple con este canon cuando no le informa al cliente cuál es el estatus procesal del caso, si hubo un resultado adverso, así como cuando el letrado se torna inaccesible o no atiende los reclamos de información que le hace su cliente. In re Rivera Rodríguez, supra, pág. 12.

### D. Canon 20 de Ética Profesional

El Canon 20 de Ética Profesional, supra, contempla lo relacionado a la renuncia de un abogado a la representación legal de un cliente. Este canon dispone:

> Cuando el abogado [o la abogada] haya comparecido ante un tribunal en representación de un cliente no puede ni debe renunciar la representación profesional de su cliente sin obtener primero el permiso del tribunal y debe solicitarlo solamente cuando exista una razón justificada e imprevista para ello.

> Antes de renunciar la representación de su cliente el abogado [o la abogada] debe tomar aquellas medidas razonables que eviten perjuicio a los derechos de su cliente tales como notificar de ello al cliente; aconsejarle debidamente sobre la necesidad de una nueva representación legal cuando ello sea necesario; concederle tiempo para conseguir una nueva representación legal; aconsejarle sobre la fecha límite de cualquier término de ley que pueda afectar su causa de acción o para la radicación de cualquier escrito que le pueda favorecer; y el cumplimiento de cualquier otra disposición legal del tribunal al respecto, incluyendo la notificación al tribunal de la última dirección conocida de su representado.

> Al ser efectiva la renuncia del abogado [o la abogada], debe hacerle entrega del expediente a su cliente y de todo documento relacionado con el caso y reembolsar inmediatamente cualquier cantidad

adelantada que le haya sido pagada en honorarios
por servicios que no se han prestado.

Hemos establecido que un abogado o una abogada queda relevado de la obligación de proteger los intereses de un cliente únicamente cuando "discrepancias irreconciliables de criterio con el cliente relativas a la defensa del caso, o insalvable conflicto personal o fricción entre el cliente y el abogado justifiquen la renuncia de [e]ste ante el tribunal para que le sustituya otro abogado". In re López Santiago, 199 DPR 797, 813-814 (2018). Por ende, "un togado que haya comparecido ante el tribunal, representando a un cliente, debe obtener el permiso del tribunal para que la renuncia sea efectiva". In re Rivera Rodríguez, supra, pág. 1049.

De igual manera, es norma reiterada que un abogado no tiene un derecho de retención sobre el expediente de su cliente. In re Ríos Ríos, 175 DPR 57, 74 (2008). Si el tribunal aprueba la renuncia, "los abogados están obligados a entregarle a su cliente el expediente y todo documento relacionado con el caso". In re Hernández López, 198 DPR 340, 350 (2017). Ello es así ya que la causa de acción y el expediente son exclusivos del cliente. In re García Ortiz, 187 DPR 507, 520 (2012). Por lo que "no debe haber dilación alguna en su entrega una vez el abogado concluye las gestiones para las cuales fue contratado o cuando el cliente solicita dicha entrega". In re García Ortiz, 198 DPR 432, 443 (2017).

### III

**i. AB-2020-0102**

En resumen, el señor Fournier Dasta expuso en su queja que el licenciado Ocasio Bravo: (1) no cumplió con las órdenes del Tribunal de Primera Instancia y no compareció a las vistas señaladas en los casos en los que lo representaba; (2) no representó adecuadamente sus intereses en el caso de pensión alimentaria lo que conllevó que se le impusiera una pensión mayor a la que pagaba y el pago de sanciones; (3) no mantuvo una comunicación efectiva durante los meses de octubre y noviembre de 2019, y no le informó oportunamente de la Resolución de 26 de septiembre de 2019 en la que se aumentó la pensión, y (4) no atendió oportunamente la solicitud de su cliente para que renunciara y le devolviera el expediente del caso.

Según surge del tracto reseñado, por estos hechos, el licenciado Ocasio Bravo incurrió en conducta violatoria del Canon 9, 18, 19 y 20 de Ética Profesional, supra.

Primero, de la investigación de la OPG surge que el licenciado Ocasio Bravo asumió la representación legal del señor Fournier Dasta en los Casos Núm. F CU2018-0110 y F AL2018-0198, a partir de noviembre de 2018 y abril de 2019, respectivamente. Este acudió a varias vistas y realizó diversas gestiones en representación de su cliente durante la tramitación de estos casos. No obstante, ni el licenciado Ocasio Bravo ni el señor Fournier Dasta comparecieron a la vista del 19 de septiembre de 2019. Esto llevó a que se

celebrara una vista para la fijación de una pensión alimentaria al señor Fournier Dasta sin su comparecencia o la de su representante legal. A su vez, en la aludida vista se le impuso una sanción económica al señor Fournier Dasta por su incomparecencia. Ante un requerimiento de información de la OPG a los efectos de que se proveyera la razón de la incomparecencia, el licenciado Ocasio Bravo indicó que no tenía clara la fecha de la vista.

De igual modo, el 3 de diciembre de 2019 se celebró una vista en relación con el caso de custodia a la que compareció el licenciado Ocasio Bravo. En esta se le concedieron 5 días para pagar la sanción impuesta y 20 días para replicar la moción de desacato presentada por la parte contraria. Ello, ante su incumplimiento con el pago de la pensión establecida.

A su vez, el licenciado Ocasio Bravo tampoco compareció a la vista pautada para el 21 de enero de 2020. Este no proveyó justificación válida para esta incomparecencia al Tribunal de Primera Instancia ni en este procedimiento disciplinario. Ante su incomparecencia, el Tribunal le ordenó que mostrara causa por esta, pagara el sello de suspensión y devolviera el expediente a su cliente en cinco días. No obstante, no surge de la documentación que examinó la OPG que el licenciado Ocasio Bravo hubiese cumplido con estas órdenes.

Por otra parte, surge del expediente que el licenciado Ocasio Bravo, durante el trámite disciplinario de esta queja, desplegó una conducta displicente al incumplir en múltiples

ocasiones con los términos concedidos por la OPG para contestar los requerimientos que le realizó.

De lo anterior se puede colegir claramente que el letrado, ante su desatención reiterada de las órdenes dictadas por el foro primario y los requerimientos de la OPG, infringió el Canon 9 de Ética Profesional, supra.

El licenciado Ocasio Bravo también faltó a su deber de competencia y de representación adecuada con su cliente. Ello se evidencia en que este no acudió a la vista pautada para el 19 de septiembre de 2019, en la que se aumentó la pensión que pagaría el señor Fournier Dasta. Aun si el licenciado Ocasio Bravo pudiera justificar que hubo confusión sobre la fecha de la vista, **no existe controversia en cuanto a que el 30 de septiembre de 2019 el Tribunal le notificó una Resolución —emitida el 26 de septiembre de 2019— que recogía las determinaciones de la pensión que se hicieron en la vista.** Sin embargo, del expediente no surge que el letrado haya solicitado reconsideración o hubiese recurrido de esa determinación al Tribunal de Apelaciones. Nótese que cuando la OPG cuestionó al licenciado Ocasio Bravo la razón para no recurrir de esa Resolución, este no pudo exponer una razón válida y solo indicó que él pensaba que los escritos se habían presentado y no dio seguimiento a ello. De otra parte, este tampoco representó adecuadamente los intereses de su cliente cuando no se opuso a las mociones de desacato que presentó la parte adversa y cuando no compareció a la vista de 2 de enero

de 2020, a la cual compareció su cliente sin su representación legal.

Es forzoso concluir, pues, que la conducta del licenciado Ocasio Bravo constituyó una violación al Canon 18 de Ética Profesional, supra.

Por otra parte, el señor Fournier Dasta adujo que el licenciado Ocasio Bravo no mantuvo una comunicación adecuada con él durante los meses de octubre y noviembre de 2019, y que no le notificó oportunamente la Resolución del 26 de septiembre de 2019. Expresó que supo de la Resolución en la vista de 3 de diciembre de 2019, casi dos meses después. Por su parte, en la contestación a la queja el letrado reconoció que hubo una falta de comunicación con el señor Fournier Dasta y alegó que estaba trabajando el asunto. Además, aun cuando el letrado alegó que discutió diversos aspectos del caso con su cliente, no contestó la interrogante de la OPG sobre cómo se comunicaba con su cliente mientras ostentó su representación legal. De igual modo, cuando la OPG le cuestionó al letrado sobre si notificó la Resolución del 26 de septiembre de 2019 al señor Fournier Dasta y en qué fecha, este solo indicó que la "evidencia de las determinaciones de las resoluciones" se envió a este el 13 de diciembre de 2019 a su correo electrónico. Lo anterior, a pesar de que el licenciado Ocasio Bravo tenía conocimiento de la determinación desde el 30 de septiembre de 2019.

Por lo anterior, resolvemos que el licenciado Ocasio Bravo faltó a su deber de mantener una comunicación adecuada

con su cliente, ya que no le informó oportunamente la Resolución de 26 de septiembre de 2019, según exige el Canon 19 de Ética Profesional, supra. La determinación de una nueva pensión alimentaria era un asunto importante que debió ser comunicado prontamente a su cliente.

Del expediente ante nuestra consideración surge que el 29 y 30 de diciembre de 2019, y el 1 de enero de 2020, el señor Fournier Dasta remitió mensajes al licenciado Ocasio Bravo solicitándole que renunciara a su representación legal. De igual modo, el 9 de enero de 2020 el señor Fournier Dasta presentó una moción ante el Tribunal de Primera Instancia, por derecho propio, en la que solicitó la renuncia del letrado y que se le ordenara la entrega del expediente. A pesar de estas solicitudes del señor Fournier Dasta, no surge del expediente de esta queja que el letrado haya solicitado el relevo de la representación legal, conforme obliga el Canon 20 de Ética Profesional, supra. Incluso, el licenciado Ocasio Bravo no compareció a la vista de 21 de enero de 2020, en la que el señor Fournier Dasta reiteró su solicitud al Tribunal, en la que se concedió el remedio solicitado y se le ordenó al letrado a que devolviera el expediente en cinco días. Posterior a ello, la nueva representante legal del señor Fournier Dasta le informó al Tribunal que, a pesar de las gestiones que realizó, no había obtenido copia del expediente de su cliente.

Ante esta alegación, el licenciado Ocasio Bravo arguyó que al señor Fournier Dasta se le notificaba copia de todos

los documentos que se presentaban en el caso y que el expediente físico se lo envió por mensajero. A pesar de habérsele requerido por parte de la OPG, el licenciado Ocasio Bravo no proveyó la fecha de esta entrega ni evidencia de ello.

Por todo lo anterior, concluimos que el licenciado Ocasio Bravo infringió los preceptos del Canon 20 de Ética Profesional, supra, al no solicitar el relevo de representación legal del señor Fournier Dasta al Tribunal, conforme se le solicitó, y al no entregarle el expediente a su cliente sin dilación alguna como requiere el aludido precepto.

**ii. AB-2022-0010**

En lo que atañe a esta queja, al licenciado Ocasio Bravo se le concedieron múltiples términos para que presentara su contestación, lo que no hizo. Esto, sin duda, además de representar otra instancia más de la conducta indolente del letrado, supone una violación al Canon 9 de Ética Profesional, supra, ante el incumplimiento reiterado de nuestras órdenes.

**IV**

Previo a determinar la sanción correspondiente a un abogado que ha infringido los Cánones de Ética Profesional, este Tribunal ha enunciado que procede que se consideren los factores siguientes: (1) la reputación del abogado en la comunidad; (2) su historial disciplinario; (3) si la conducta es una aislada; (4) si medió ánimo de lucro; (5) si presentó una defensa frívola de su conducta; (6) si ocasionó perjuicio

a alguna parte; (7) si resarció al cliente; (8) si demostró aceptación o arrepentimiento sincero por la conducta que le fuera imputada, y (9) otros atenuantes o agravantes que surjan de los hechos. In re Roldán González, 195 DPR 4141 (2016).

Es menester señalar que el licenciado Ocasio Bravo lleva veinticinco años en el ejercicio de la abogacía. No obstante, el 25 de octubre de 2019, este fue amonestado y censurado enérgicamente, en los procedimientos disciplinarios AB-2018-0256 y AB-2018-0260, respectivamente. A su vez, fue apercibido de que cualquier incumplimiento posterior con sus obligaciones éticas conllevaría la imposición de sanciones disciplinarias más severas.

**En vista de lo anterior, suspendemos al licenciado Ocasio Bravo del ejercicio de la abogacía y la notaría de manera inmediata e indefinida. Ello, por razón de haber transgredido las normas preceptuadas en los Cánones 9, 18, 19 y 20 del Código de Ética Profesional, <u>supra</u>.**

En consecuencia, se le impone al señor Ocasio Bravo el deber de notificar a todos sus clientes sobre su inhabilidad para continuar representándolos, y devolverles cualesquiera honorarios recibidos por trabajos no realizados. De igual forma, tendrá que informar de su suspensión a cualquier foro judicial o administrativo en el que tenga algún caso pendiente. Deberá acreditar y certificar ante este Tribunal el cumplimiento con lo anterior, incluyendo una lista de los clientes y los foros a quienes le notificó de su suspensión, dentro del término de 30 días contado a partir de la

notificación de la presente Opinión *Per Curiam* y Sentencia. No hacerlo pudiera conllevar que no se le reinstale al ejercicio de la abogacía de solicitarlo en el futuro.

Por su parte, se le ordena al Alguacil de este Tribunal incautar inmediatamente la obra y el sello notarial del señor Rodolfo G. Ocasio Bravo y entregarlos al Director de la Oficina de Inspección de Notarías para la inspección e informe correspondiente. Además, en virtud de esta suspensión inmediata e indefinida del ejercicio de la notaría, la fianza que garantiza sus funciones notariales queda automáticamente cancelada. La fianza se considerará buena y válida por 3 años después de su terminación, en cuanto a los actos realizados durante el periodo en que esta estuvo vigente.

Notifíquese personalmente esta Opinión *Per Curiam* y Sentencia al Sr. Rodolfo G. Ocasio Bravo.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re:*

Rodolfo G. Ocasio Bravo          AB-2020-0102
     (TS-11,850)                      AB-2022-0010

SENTENCIA

En San Juan, Puerto Rico, a 30 de junio de 2022.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte de la presente Sentencia, suspendemos al Lcdo. Rodolfo G. Ocasio Bravo del ejercicio de la abogacía y la notaría de manera inmediata e indefinida. Ello, por razón de haber transgredido las normas preceptuadas en los Cánones 9, 18, 19 y 20 del Código de Ética Profesional.

En consecuencia, se le impone al señor Ocasio Bravo el deber de notificar a todos sus clientes sobre su inhabilidad para continuar representándolos, y devolverles cualesquiera honorarios recibidos por trabajos no realizados. De igual forma, tendrá que informar de su suspensión a cualquier foro judicial o administrativo en el que tenga algún caso pendiente.

Deberá acreditar y certificar ante este Tribunal el cumplimiento con lo anterior, incluyendo una lista de los clientes y los foros a quienes le notificó de su suspensión, dentro del término de 30 días contado a partir de la notificación de la presente Opinión *Per Curiam* y Sentencia. No hacerlo pudiera conllevar que no se le reinstale al ejercicio de la abogacía de solicitarlo en el futuro.

Por su parte, se le ordena al Alguacil de este Tribunal incautar inmediatamente la obra y el sello notarial del señor Rodolfo G. Ocasio Bravo y entregarlos al Director de la Oficina de Inspección de Notarías para la inspección e informe correspondiente. Además, en virtud de esta suspensión inmediata e indefinida del ejercicio de la notaría, la fianza que garantiza sus funciones notariales queda automáticamente cancelada. La fianza se considerará buena y válida por 3 años después de su terminación, en cuanto a los actos realizados durante el periodo en que esta estuvo vigente.

Notifíquese esta Opinión *Per Curiam* y Sentencia al señor Ocasio Bravo.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Kolthoff Caraballo, el Juez Asociado señor Rivera García y el Juez Asociado señor Estrella Martínez no intervinieron.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo